# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 08-CV-0188-MJR |
| | ) |
| **MERCY REGIONAL HEALTH** | ) |
| **SYSTEMS, LTD., d/b/a MERCY** | ) |
| **REGIONAL EMERGENCY HEALTH** | ) |
| **SERVICES and CLAYTON W. HOBBS,** | ) |
| | ) |
| **Defendants.** | ) |

## TEMPORARY RESTRAINING ORDER

**REAGAN, District Judge**:

This matter comes before the Court on consideration of the Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction, and Damages under the False Claims Act by the United States. On March 11, 2008, the Court held an ex parte hearing regarding the United States's request for a temporary restraining order (See Doc. 3). No testimony was taken. Having considered the matter and being duly advised in the premises, the Court now finds that a temporary restraining order should and hereby does **ISSUE** pursuant to **18 U.S.C. § 1345** and **FEDERAL RULE OF CIVIL PROCEDURE 65(b)**, though not to the full extent requested by the United States.

Title 18, Section 1345 of the United States Code authorizes the Attorney General to commence a civil action seeking a restraining order against any person who "is alienating or disposing of property, or intends to alienate or dispose of property obtained as a result of . . . a Federal health care offense." The restraining order may "(i) prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent

value; and (ii) appoint a temporary receiver to administer such restraining order." Additionally, any such restraining order "shall be granted without bond." **18 U.S.C. § 1345(a)(3)**. **18 U.S.C. § 1345(b)** provides that the Federal Rules of Civil Procedure govern proceedings under this statute.

**FEDERAL RULE OF CIVIL PROCEDURE 65(b)** authorizes the issuance of a temporary restraining order (TRO). The Seventh Circuit has emphasized that, although Rule 65(b) expressly contemplates the issuance of ex parte TROs, the circumstances under which an ex parte TRO should be granted are extremely limited.

> The "stringent restrictions" imposed "on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, . . . but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Ex parte temporary restraining orders are most familiar to courts where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.

*American Can Co. v. Mansukhani*, **742 F.2d 314, 321–22 (7th Cir. 1984) (quoting** *Granny Goose Foods*, **415 U.S. 423, 438–39 (1974)).**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*, **2001 WL 527404 (N.D. Ill. May 15, 2001) (unreported).** However, the notice provisions governing TROs are unique. Rule 65(b)(1) permits a federal court to grant a TRO without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to

the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Additionally, under Rule 65(b), a temporary restraining order granted without notice may last no longer than ten days unless an extension, supported by a statement of reasons, is granted. ***Rothner v. City of Chicago*, 879 F.2d 1402, 1419 (7th Cir. 1989).** Rule 65(b) further provides that a TRO cannot remain in effect for more than 20 days total (the original ten plus one ten-day extension), without the consent of the parties. If it is extended further, it becomes a preliminary injunction, immediately appealable to the Circuit Court. ***See United States v. Board of Education of City of Chicago*, 11 F.3d 668, 671-72 (7th Cir. 1993);** *see also* **FED.R.CIV.P. 65 (b)(2).**[1]

With respect to Rule 65(b)(1)(A)–(B), the movant's attorney has now provided the Court with a certified writing in the form of an affidavit explaining specific facts which show immediate and irreparable injury if the TRO is not granted ex parte (Doc. 5). Additionally, the affidavit provides reasons why the TRO should be issued without notice. Therein, Gerald Burke, Assistant United States Attorney, states that Defendant Hobbs is the principle of Mercy Regional Health Systems and has been recently indicted by a federal grand jury (See Case No. 08-30042-MJR). According to the United States, Hobbs is currently in federal custody and scheduled for an

---

[1] Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 10 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

initial appearance in the United States District Court for the Northern District of Oklahoma. Consequently, he is unable to run the business and is unavailable to appear before the Court at this time. Additionally, Mercy Regional has a history of issuing paychecks to its employees that have been returned for insufficient funds. As such, it is not clear as to whether Mercy Regional will be able to continue its operations. Mercy Regional operates the largest ambulance service in the area in and around Benton, Illinois. Calls made to 911 in the Benton area are currently directed to Mercy Regional, but alternative arrangements have been made in the event that Mercy Regional's business assets are restrained. Therefore, the United States explains that it fears sporadic and unpredictable ambulance services if Mercy Regional's business assets are not restrained.

While these fears may be justified, the government provides no authority for the extraordinary request to shut down defendant's business nor does **18 U.S.C. § 1345** authorize it. The Court does not find these specific allegations of irreparable harm persuasive in support of Plaintiff's motion since, as stated later, it will decline the invitation to restrain the business assets and shut down its operation, which is a request made by Plaintiff at oral argument but not in its pleadings.

However, 18 U.S.C. § 1345(a)(2) specifically indicates the presence of irreparable harm in cases such as this, as the statute contemplates the issuance of a TRO where the defendant is "alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of . . . a Federal health care offense." Additionally, in this case, the irreparable harm is serious enough to warrant the issuance of a TRO prior to a hearing during which the movant can be heard, due to the harm federal health care offenses, which are alleged to be ongoing, may do the federal Medicare and Medicaid programs. Thus, the United States has made a sufficient showing of an

4

immediate and irreparable injury, as required by Rule 65(b)(1)(A).

With respect to Rule 65(b)(1)(B), the Court similarly finds that Assistant United States Attorney Burke's certification provides a sufficient reason as to why notice should not be required. Hobbs is the principal of Mercy Regional and was taken into custody in Oklahoma yesterday. Therefore, his appearance cannot be made in this case. Further, it is not clear that Mercy Regional or Hobbs are currently represented by legal counsel. Consequently, time is a pressing factor in light of the irreparable harm present here, and the Defendants are unable to appear in time to hold an adversary hearing on this matter. As such, the Court finds that Rule 65(b)(1)(B) is satisfied, and notice should not be required at this time.

Having determined that a TRO, if issued in this case, would be proper without notice to the opposing party, the Court now examines whether a TRO should in fact be granted. In its complaint, the United States requests that the Court order ten separate forms of relief.[2] In summary, these include: (1) restraining Defendants from making or conspiring to make false or fraudulent reimbursement claims to Medicare and Medicaid, (2) restraining Defendants from withdrawing or transferring funds presently deposited in certain accounts, (3) restraining Defendants from encumbering, disposing, or transferring real or personal assets acquired after June 1, 2004, (4) restraining Defendants from accepting, collecting, encumbering, transferring, or disposing of funds received from Medicaire and Medicaid as a result of a fraudulent scheme, (5) restraining financial institutions, healthcare benefits programs, brokers, employees, agents, and/or other entities having

---

[2] At the March 11, 2008 hearing, the United States also indicated that it was requesting the restraint of all of Defendants' business assets, which would have the effect of requiring Defendants to cease all operations of its ambulance service during the pendency of a restraining order. This was not explicitly requested in the United States's complaint, but rather appears to be ultimately covered by the United States's collective requests for relief.

5

possession or control of Defendants' assets from disposing of or transferring such assets, (6) ordering Defendants to preserve business, financial, and accounting records which detail Defendants' disposition of any payment which directly or indirectly arose from Medicare or Medicaid claims, (7) ordering Defendants to provide financial reports on a monthly basis, (8) ordering Defendants to provide discovery to the United States, beginning immediately, (9) ordering the U.S. Marshal to secure the premises at 205 Bailey Lane, Benton, Illinois and 137 Industrial Park Road, Benton, Illinois, and (10) ordering Defendants to pay the United States's costs and attorney's fees incurred in the prosecution of this action.

First, the Court notes that some of the requested relief is overly broad and/or unnecessary to preserve the interests of the United States. For example, in its second and third requests, the United States seeks to restrain all of the Defendants' assets held in real property or particular bank accounts, irrespective of whether the funds therein exceed to total amount at issue in this action. The only qualification the United States makes is that it only seeks to restrain property acquired after June 1, 2004. However, the Court will only restrain assets in bank accounts that the United States has claimed are traceable to the violations alleged. Therefore, the Court will not restrain funds in excess of the amount in controversy in this case—$94,549.76. As to the real property, the Court finds no specific allegation in the complaint that any real property or business assets were purchased or derived from the wrongful conduct alleged. Therefore, the Court cannot restrain these assets, and consequently, will not order the U.S. Marshal to take control of certain real estate properties, which was sought in the United States's ninth request.

Additionally, the United States's fifth request seeks to enjoin third parties having possession or control of Defendants' assets from disposing or transferring such assets. However,

injunctions and restraining orders are not effective against the world at large. Rule 65(d)(2) is clear that only certain parties can be bound by the restraining order:

> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (c) other person who are in active concert or participation with anyone with [the parties or its agents].

Therefore, the Court cannot enjoin financial institutions or healthcare benefits programs without some showing that they fall within the scope of Rule 65(d)(2). However, it is clearly within the Court's power to restrain Defendants' brokers, employees, and agents. Of course, it would be improvident for a financial institution to permit a restrained defendant from accessing accounts it holds in his/their name.

Additionally, the United States's seventh request overreaches. It asks that Defendants be required to provide certain financial information on a monthly basis. While the United States may have a legitimate basis to obtain these documents in discovery, there is no need to compel Defendants to make ongoing statements to the United States beginning immediately. Additionally, while the ramifications of compliance with such a requirement are not entirely clear at this time, the Court is concerned that such an order might create a conflict with the Defendants' Fifth Amendment privilege against self-incrimination as the United States has commenced a criminal action against Defendants for the same or similar conduct (See Case No. 08-30042-MJR).

The United States's eighth request seeks a Court order that Defendants provide discovery immediately. However, the Court prefers to make *both* parties abide by the discovery rules as provided by the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Illinois. This orderly fashion will protect Defendants' rights in the criminal case.

The United States's tenth request for costs and attorney's fees is premature. The Court is willing to entertain a fully briefed motion for costs and fees at the conclusion of this litigation. However, the Court will not preemptively order costs and fees where the United States has not yet prevailed.

As to all other relief requested by the United States, the Court finds as follows. District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. ***See, e.g., Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*, 2001 WL 527404 (N.D. Ill. May 15, 2001) (unreported).** The movant must make an initial showing that (1) its case has a likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) they will suffer irreparable harm if injunctive relief is not granted. ***See, e.g., Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1054-55 (7th Cir. 2004).** If the movants meet the burden on these three requirements, then the Court considers two additional criteria: (4) the balance of harm to the plaintiff if the TRO is wrongly denied outweighs the harm to the defendant if the TRO is wrongly granted, and (5) the public interest. ***Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).**

The Court finds that the United States has shown a likelihood of success on the merits. The complaint alleges sufficient facts indicating that the Defendants are committing and are about to commit a federal health care offense and that the Defendants are engaged in an ongoing scheme to defraud in violation of 18 U.S.C. § 287 (False Claims), 18 U.S.C. § 1347 (Health Care Fraud), 42 U.S.C. § 1320, et seq. (Medicare Fraud) and 31 U.S.C. §§ 3729-3733 (False Claims Act). The Court further finds that a continuing and substantial injury to the United States and the State of Illinois is likely to occur as follows:

1. the continued commission of a federal health care offense (18 U.S.C. § 1347);

2. the continued violation of 18 U.S.C. § 287, 42 U.S.C. § 1320, et seq. (Medicare Fraud) and 31 U.S.C. §§ 3729-3733 (False Claims Act); and

3. the continued disposition and/or alienation of funds or assets obtained as a result of the federal health care offense or equivalent value of funds resulting from their commission of a federal health care fraud offense.

As a result, the United States has shown that there is a likelihood of success on the merits.

As to the second prong, the United States has barely but sufficiently, at this stage, shown that there is no adequate remedy at law. Here, money damages will not suffice because if the funds or assets at issue are not restrained, there is a likelihood that Defendants will dispose of those funds or assets. Moreover, the facts support the allegation that Defendants are using these assets to commit ongoing violations of federal law. Violations of the nature alleged not only defraud the United States of its property/funds, but also impede the ability of the Medicare and Medicaid programs to efficiently and properly function. Therefore, the United States has made a sufficient showing that there is no adequate remedy at law.

Similarly, the United States has established irreparable harm. As noted above, if the requested injunctive relief is not granted, Defendants may dispose of the funds resulting from the fraud. Additionally, 18 U.S.C. § 1345(a)(2) specifically indicates the presence of irreparable harm in cases such as this, as it contemplates the issuance of a TRO where the defendant is "alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of . . . a Federal health care offense." Accordingly, the Court finds that the United States and its citizens will suffer irreparable harm if injunctive relief is not granted.

As to the fourth prong, the Court finds that the harm to Plaintiff if the TRO is wrongly denied would outweigh any harm to Defendants if the TRO is wrongly granted. Under the

circumstances of this case, wrongful failure to grant the TRO could permit current and future violations of federal law via the use of the assets in question, thereby damaging the ability of the Medicare and Medicaid programs to efficiently and properly function. However, the only harm that Defendants would endure if the TRO was wrongly granted would be economic harm, which can be easily remedied at a later date. Therefore, the balance of harms weighs in favor of granting the TRO.

Finally, the Court finds that the interest of the public can only be protected if the TRO is granted. Support for this finding is clear in the Court's earlier discussions of the allegations that Defendants are engaged in continuing federal health care offenses and the negative effect these offenses have on federal health care programs.

Therefore, at 11:30 a.m., this 13th day of March 2008, this Court **ISSUES** a Temporary Restraining Order enjoining and prohibiting the Defendants, their agents, servants, employees, attorneys, and all persons acting in concert and participation with them, be enjoined or ordered as follows:

1. Defendants are restrained from making or conspiring to make, false or fraudulent reimbursement claims to Plaintiff's agents, the Medicare and Medicaid health benefits programs, in violation of 18 U.S.C. § 287;

2. Defendants are restrained from withdrawing or transferring any moneys or sums presently deposited, or held on their behalf by any financial institution, trust fund, brokerage agency or other financial agency, public or private, including but not limited to the accounts described below which are maintained at the State Bank of Whittington, Whittington, Illinois, First National Bank of Mt.

10

Auburn Bank, Edinburgh, Illinois, and/or Prairie National Bank, Stewardson, Illinois, and/or branches:

**STATE BANK OF WHITTINGTON**

Account # XXX-781-2,

**FIRST NATIONAL BANK OF MT. AUBURN**

Account # XX7066,

**PRAIRIE NATIONAL BANK**

Account # XX0313,

though the amount of funds restrained in these accounts **shall not exceed $94,549.76 in the aggregate**;

3. Defendants are restrained from accepting collecting transferring, alienating, encumbering and/or disposing of, or otherwise taking any action with respect to money and/or payments in whatever form received or shall be received from the Medicare and Medicaid programs or financial institutions as a result of their fraudulent scheme;

4. Defendants' brokers, employees, or agents having possession or control of Defendants' assets are restrained from disposing of or transferring such assets from the time of service of a copy of the Temporary Restraining Order on them; and

5. Defendants are ordered to preserve the business, patient, financial and accounting records, including bank records, and brokerage account records which detail Defendants' disposition of any payment which directly or indirectly

arose from the payment of money to Defendants as payment on behalf of either the Medicare or Medicaid programs, or from altering in any way the same described records.

This Temporary Restraining Order will **EXPIRE** at 11:30 a.m. on the 27th day of March 2008, and a hearing on the United States' Motion for Preliminary Injunction is **SET** for **March 21, 2008, at 11:15 a.m.** before this Court.

**IT IS SO ORDERED.**

**Dated this 13th day of March 2008.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**
